Submitted December 6, 2019, affirmed January 29, 2020

In the Matter of J. W.,
a Person Alleged to have Intellectual Disabilities.
STATE OF OREGON,
*Respondent,*

*v.*

J. W.,
*Appellant.*

Lane County Circuit Court
19CC00796; A170260

458 P3d 1137

Appellant was committed to the Department of Human Services for a period not to exceed one year, pursuant to ORS 427.290, on the basis that, due to an intellectual disability, he was unable to provide for his personal needs and was dangerous to himself. Appellant appeals the judgment of commitment, arguing that the evidence presented at his commitment hearing was insufficient to establish that he has an intellectual disability as defined in ORS 427.005(10). The state contends that the evidence was sufficient. The parties' dispute turns entirely on whether the trial court did or did not admit the precommitment report into evidence at the hearing. *Held*: The trial court did admit the precommitment report into evidence. To the extent that its manner of doing so might have been subject to challenge, appellant did not preserve any claim of procedural error in that regard. The evidence therefore was sufficient to support the court's determination that appellant has an intellectual disability for purposes of ORS 427.290.

Affirmed.

Maurice K. Merten, Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Appellant appeals a judgment committing him to the Department of Human Services (DHS), pursuant to ORS 427.290, for a period not to exceed one year. The trial court found that, due to an intellectual disability, appellant was unable to provide for his personal needs and was dangerous to himself. Appellant challenges the sufficiency of the evidence on all three points. The state concedes that the evidence was insufficient to establish that appellant was unable to provide for his personal needs, and we agree and accept that concession. As for appellant being dangerous to himself, the state argues that there was sufficient evidence to support that determination, and we agree without further discussion. We write only to address the sufficiency of the evidence that appellant has an intellectual disability. Ultimately, we affirm.

ORS 427.215 to 427.306 addresses the involuntary commitment of persons with intellectual disabilities. An "intellectual disability" means "an intelligence quotient of 70 or below as measured by a qualified professional and existing concurrently with significant impairment in adaptive behavior, that is manifested before the individual is 18 years of age," *or* "intelligence quotients of 71 through 75 * * * if there is also significant impairment in adaptive behavior, as diagnosed and measured by a qualified professional." ORS 427.005(10) (definition for purposes of ORS chapter 427).[1] A person may be committed to DHS for care, treatment, or training if the court determines that (1) the person has an intellectual disability; (2) because of the intellectual disability, the person is either (a) dangerous to self, (b) dangerous to others, or (c) unable to provide for personal needs and not receiving care as is necessary for the person's health, safety, or habilitation; and (3) voluntary treatment and training or conditional release is not in the person's best interest. ORS 427.290.

Whether the record contains sufficient evidence to support a commitment is a question of law, which we review

---

[1] ORS 427.005(10) has been amended since appellant's hearing, but the amendments do not affect our analysis, so we quote the current version of the statute.

for legal error. *State v. D. M.*, 245 Or App 466, 468, 263 P3d 1086 (2011). In this case, as previously noted, we write only to address the sufficiency of the evidence that appellant has an intellectual disability.

Appellant argues that the evidence was insufficient to establish that he has an intellectual disability, because the record is devoid of evidence of his intelligence quotient (IQ). Given the statutory definition of "intellectual disability," a person cannot be committed under ORS 427.290 without evidence of a qualifying IQ. *See* ORS 427.005(10). Appellant argues that the only information about his IQ appeared in a precommitment investigation report with attachments (the precommitment report) that was never admitted into evidence. In response, the state argues that the precommitment report *was* admitted into evidence, without objection, at the beginning of the hearing.

Appellant does not contest that, if the precommitment report was admitted into evidence, then the evidence was sufficient for the trial court to find that appellant has an intellectual disability for purposes of ORS 427.290. One of the attachments to the precommitment report was Dr. Northway's psychological evaluation, which indicates that appellant has a "Full Scale IQ Score falling between 60 and 68 with 95% confidence," that his intellectual disability has been present since childhood, and that his adaptive behavioral testing scores "are strongly suggestive of a relatively significant intellectual disability." Thus, the critical question on appeal is whether the precommitment report was—or was not—admitted into evidence.

The trial court docket shows that, several days before appellant's commitment hearing, a copy of the precommitment report was filed with the court. And, at the beginning of the commitment hearing, the trial court stated on the record that it had "received" the report. Specifically, the court opened the proceeding, advised appellant of his rights, and, before the lawyers had spoken, stated:

"THE COURT: I received a report of pre-commitment investigation sworn to by Ms. Morales, and its attachments. Ms. Morales, is there anything you want to add to your report?

"MS. MORALES:    No, Your Honor.

"THE COURT:    Who do you want me to hear from?

"MS. MORALES:    Briana Johnson, Your Honor.

"THE COURT:    Please come on up."

Johnson and other witnesses proceeded to testify. None of the witnesses mentioned the precommitment report, nor did the state ever refer to it. However, appellant's own trial counsel mentioned it in closing argument—as will be discussed shortly—and the trial court expressly cited it in its judgment of commitment.

The state views the above-quoted statement by the trial court as a ruling admitting the precommitment report into evidence, without objection by appellant.[2] Appellant disagrees, asserting that the report was never admitted into evidence, even if it was in the trial court's physical possession. Notably, the report was *not* marked as an exhibit, and the official hearing transcript lists the exhibits admitted as "none." Yet, notwithstanding the obvious benefits of marking exhibits when receiving evidence, appellant does not point to any authority that actually *requires* evidence to be marked as an exhibit to be admitted into evidence. Moreover, during closing argument, appellant's trial counsel referred to the precommitment report in a way that indicates that he understood it to have been admitted into evidence. Counsel referred to "the report that Ms. Morales presented," pointed to the "part of the report" that was "Dr. Northway's examination of [appellant]," and argued that Northway's evaluation was "hearsay without testimony of Dr. Northway, who has not presented any evidence today to this Court." In

---

[2] The state asserts that the trial court admitted the precommitment report by receiving it on the record at the beginning of the hearing; it does *not* contend that the court could consider the report without admitting it into evidence. Under the statutory scheme, the court necessarily receives a copy of the precommitment report before any commitment hearing is held. *See* ORS 427.235 (notice and investigation procedures). As such, the precommitment report will always be in the trial court's physical possession and, once filed, part of the trial court record. However, ORS 427.285 provides that "[t]he investigator and other appropriate persons or professionals as necessary shall appear at the hearing and present the evidence." For purposes of this opinion, we assume, as the parties do, that the report had to be admitted into evidence at the hearing, even if it was already in the trial court record.

other words, appellant's trial counsel implicitly recognized that the precommitment report was in evidence but argued that one part of it—Northway's evaluation—was inadmissible hearsay. The trial court implicitly overruled appellant's hearsay objection.

On appeal, appellant does not assert that the trial court erred in overruling his hearsay objection.[3] That is, appellant does not assign error to an erroneous evidentiary ruling regarding Northway's evaluation. *See* ORAP 5.45 (3)(a) ("Each assignment of error must identify precisely the legal, procedural, factual, or other ruling that is being challenged."). Rather, to the contrary, appellant's argument is premised on the trial court *not* having admitted *any* part of the precommitment report into evidence.

We agree with the state that appellant's position in that regard is untenable. The trial court expressly stated at the beginning of the hearing that it had "received" the precommitment report. To have "received" something does not necessarily mean to have received it into evidence in a legal proceeding. *See, e.g.*, *Webster's Third New Int'l Dictionary* 1894 (unabridged ed 2002) ("to take possession or delivery of"); *Black's Law Dictionary* 1522 (11th ed 2019) ("[t]o take (something offered, given, sent, etc.); to come into possession of or get from some outside source"). On appeal, appellant apparently views the trial court as having meant "received" in the general sense of having physically received possession of the precommitment report, not in the technical sense of having admitted it into evidence. That argument is not specious. In particular, the trial court's use of the past tense ("I received a report * * *.") lends some support to it, because the court had physically received the precommitment report in the past, whereas there is no record that the court had admitted the report into evidence in the past. Ultimately, however, after close review of the transcript, we conclude that, in context, the trial court meant—and the parties would have understood that it meant—that it had received the report into evidence. Indeed, appellant's trial counsel

---

[3] Because appellant does not challenge the trial court's rejection of his hearsay objection, we express no opinion on whether that objection was timely or well-taken.

*did* understand that at the time, given his statements in closing argument.

To the extent that appellant now takes issue with *how* the report was received into evidence—*e.g.*, that it was received *sua sponte*, that it was not marked as an exhibit, that the trial court did not provide an opportunity for objections before admitting it, etc.—appellant did not preserve any claim of procedural error. "No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may, in its discretion, consider a plain error."[4] ORAP 5.45(1). Appellant never objected to the procedure by which the trial court admitted the report. To be sure, it was the state's burden to prove that the requirements for commitment were met, and, if the state failed to ensure the admission of critical evidence, the state would bear the consequences of that shortcoming. Here, however, the trial court *did* admit the evidence, and, to the extent its procedure for doing so was flawed, appellant failed to preserve any claim of procedural error (other than the hearsay objection that he does not pursue on appeal). We therefore reject appellant's argument that the evidence was insufficient to find that he has an intellectual disability for purposes of ORS 427.290 and, accordingly, affirm.

Affirmed.

---

[4] Appellant does not request plain-error review, nor would we be inclined to provide it in these circumstances.